CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 0 4 2009

JOHN F CORCORAN, CLERK
BY: K̲ ̲W̲ilson
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| WILLIAM DALE JONES, ) | Case No. 5:08cv00014 | |
| ) | | |
| *Plaintiff* ) | REPORT AND | |
| v. ) | RECOMMENDATION | |
| ) | | |
| MICHAEL J. ASTRUE, ) | By: | Hon. James G. Welsh |
| Commissioner of Social Security, ) | | U. S. Magistrate Judge |
| ) | | |
| *Defendant* ) | | |

The plaintiff, William Dale Jones, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

I.   **Administrative and Procedural History**

This case has a long procedural history. It is the consolidation of three separate Title II applications filed by the plaintiff. (R.72-74,417-421,662-663,712-716.) It has been considered by three different administrative law judges on four occasions. (R.263-318,17-32,599-652,347-360,670-672,792-817,662-667.) It has been impacted by the fact that the plaintiff must establish his entitlement to a period of Title II benefits before expiration of his insured status on December 31, 2004 (R79,81,411,718.) 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2$^d$ 240 (3$^d$ Cir., 1990). And it has now come before this court for the third time.

In each instance the plaintiff has sought the court's reversal of an adverse administrative decision on the ground that was not supported by substantial evidence or in the alternative that the case should be remanded for further administrative consideration. *See Jones v. Barnhart*, No 5:03cv00089 (WDVa), and *Jones v. Barnhart*, No. 5:06cv00092 (WDVA).

The plaintiff protectively filed his first application on August 24, 2001. (R.72-74,670.) In it and in his related submissions the plaintiff alleged that he became disabled on January 1, 2000 due to diffuse joint and related pain, headaches, and depression. (R.84,88,91,106,114,116,118,124.) In his subsequent applications, the plaintiff identified fibromyalgia, arthritis, loss of concentration, and mental lapses as additional causes of his alleged disability. (R.423,435,729,750.) Administratively, each of the plaintiff's applications was denied both initially and on reconsideration (R.33-40,42-44,367-368,375-380,383-385,676-683,774,779-788,790), and at each level of review the plaintiff has been represented by counsel. (R.45-47,263,373-374,383,389-392,408-409,599,684-686,692-695,792.)

The first hearing on the plaintiff's claim was held on March 26, 2003 before an administrative law judge ("ALJ"). (R.53-71,263-318.) The plaintiff was present and testified; Haddon Alexander, M.D., a rheumatologist, testified as a medical witness, and Sandra Wells-Brown testified as a vocational witness. (R.263-318.) By written decision dated April 24, 2003 (R.17-32), the plaintiff's claim was denied on the ground that he retained the functional ability to perform a

2

range of sedentary work.[1] After the Appeals Council declined to review the ALJ's decision, the plaintiff filed his first appeal to this court. (R.13,6-10,361-366.)

This initial decision was thereafter vacated, and the case was remanded for consideration of certain post-hearing evidence tendered to the Appeals Council.[2] (R.361-366.) After this first court remand, the Appeals Council considered the previously submitted post-hearing evidence, concluded that it did not provide an adequate basis to grant benefits at the final sequential decisional step[3] and, as permitted by the court's *sentence four*[4] remand, on September 15, 2004 vacated the earlier administrative decision and returned the case to the ALJ for further proceedings. (R.599-652.)

Following its consolidation with the plaintiff's second application,[5] a supplemental administrative hearing was held before an ALJ on April 6, 2005. (R.599-652,671.) The plaintiff and

---

[1] Sedentary work involves lifting items weighing up to 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing may be necessary to carry-out the job duties. *See* 20 C.F.R. § 404.1567(a).

[2] The additional evidence offered to the Appeals Council included certain records and a report and a Psychiatric Review Technique prepared by Cynthia Grey, Ed.S., L.P.C. (R.237-259), and certain psychiatric office visit notes of John Eagle, M.D. (R.261-262).

[3] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based upon the medical evidence, the individual has a severe impairment. 20 C.F.R § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d), If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry consideration of whether the impairment precludes the individual from performing other work. 20 C.F. R. § 404.1520(f).

[4] 42 U.S.C. § 405(g), sentence four.

[5] The plaintiff's second Title II application was filed May 22, 2003 and was subsequently denied, both initially and on reconsideration. (R.380,383-385,417-431,475).

3

his wife were present; each testified; medical testimony was provided by Charles Cooke, M.D., and vocational testimony was provided by Robert Jackson, Ph.D. (*Id.*) Based on the medical record and the testimonial evidence, by written decision dated May 25, 2005, the ALJ concluded for a second time that the plaintiff retained the functional ability to perform a range of sedentary work. (R.347-360.) The plaintiff, thereafter, instituted a timely appeal of this ALJ's decision, first to the Appeals Council and then to this court. (R.320-322,339-343,653,674-675.) At the Commissioner's request, the case was remanded to the Appeals Council for consideration of certain post-hearing evidence and exceptions submitted by the plaintiff. (R.356.) On January 26, 2008 the Appeals Council concluded that the additional evidence was essentially cumulative and declined to disturb the ALJ's prior decision. (R.653-655.)

During the pendency of his first and second applications, the plaintiff filed a third Title II application on July 25, 2005. (R.670,712-716.) It too was denied both initially and on reconsideration, and the plaintiff once again requested an administrative hearing. (R.670,674-680.) Concluding that this claim involved the same issues previously considered in the May 25, 2005 decision, it was dismissed by a second ALJ on December 5, 2005 without a hearing pursuant to doctrine of *res judicata* by a second ALJ without a hearing. (R.670-672.)

The plaintiff once again requested Appeals Council review. Both in connection with this request and in connection with his already pending request for review of the adverse May 25, 2005 administrative decision, the plaintiff once again submitted additional medical evidence to the Appeals Council which he contended further supported his claims. (R.688-691,674,774-791,324-

4

332,334-336.) On September 18, 2006 the Appeals Council determined that the *res judicata* doctrine "was not currently applicable;" it then vacated the dismissal order and returned the case to an ALJ for further consideration. (R.674-675.) Another supplemental hearing was thereafter held before a third ALJ on November 22, 2006. The plaintiff was again present, and he and his wife both testified. (R.662,696-700,796-817.) In the written decision, for a third time an ALJ considered the plaintiff not to be disabled within the meaning of the Act, and the ALJ in this instance concluded that the plaintiff retained the functional ability to perform sedentary work activity through the date that his insured status expired. (R.662-667.) Appeals Council review was subsequently denied, and for a third time the plaintiff appealed the denial of a period of Title II disability benefits to this court.

## II. Issues Presented on Appeal

In response to the plaintiff's current appeal, the Commissioner's Answer was filed on June 23, 2008, along with a certified copy of the consolidated administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In his current appeal to this court, the plaintiff asserts three basic administrative errors. First, he argues that the ALJ erred at decisional step-three in failing to find his impairments to be of listing-

5

level severity.[6] Second, he contends that the ALJ erred at step-five in finding that he retained the functional capacity to perform sedentary work activity before expiration of his insured status. Additionally, the plaintiff asserts that the ALJ erred failing to obtain the testimony of a medical advisor regarding the severity of his mental impairments. In response, the Commissioner argues that the non-disabling assessment of the plaintiff's physical and mental impairments was based on substantial evidence and, therefore, should be affirmed. Each party has moved for summary judgment; no written request was made for oral argument, [7] and the case is now before the undersigned for a report and recommended disposition.

### III.     Summary Recommendation

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

### IV.     Standard of Review

---

[6] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

[7] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of disability insurance benefits. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## V.  Facts and Analysis

The record in this case shows that the plaintiff was born in 1956 and was forty-eight years of age [8] at the time his insured status expired. (R.72,79,81,358,411,417,475,666,712,718.) He has a highschool education (R.357,666,772), and his past relevant work was unskilled and included

---

[8] Under the agency's regulations, the plaintiff is classified as a "younger person" and age is generally not considered to affect seriously such an individual's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

7

janitorial, stockroom, delivery clerk, assembly line, and general labor jobs. (R.17-18,85,97-103,122-123,357, 424,436-437, 451-457, 730-731,738,771,666.) Based on his review and consideration of the entire administrative record, the ALJ concluded at step-five of the decisional process that the plaintiff retained the functional capacity [9] to perform a full range of sedentary work activity. (R.665-667.)

Prior to the expiration of his insured status, the plaintiff's medical records show that he was being treated pharmacologically for a mental health problem which had been variously diagnosed as a somatoform,[10] anxiety, personality, pain and/or depressive disorder. (*E.g.*, R.143,146,171-172,207,212,216,220,228-230,237-241,261,336,496,501,546,559,569,574-575,577-579,588,593, 776,791.) During the same period the medical record shows that the plaintiff was also seen and treated for a variety of pain-related complaints, which had been generally described in the records as being related to degenerative arthritis, fibromyalgia, or a chronic muscle strain. (*E.g.*, R.125-127,136-142,157,166-168,169-186,199,201-204,210-213,219-220,246-259,261-262,486-490,491-495,513-518,542-553,554-556,665,783.) Dr. Stephen Phillips noted in his September 2003 consultive examination report, however, that the plaintiff's pain-related diagnosis was "somewhat unclear" and that there was "with some evidence of symptom magnification and [a] voluntary exaggeration of findings" by the plaintiff. (R.521; *see also* R.523-526.)

---

[9] At the plaintiff's decisionally relevant age and if he was able to perform a full range of light work, a finding of "not disabled" would be directed by application of the Medical-Vocational Guidelines. ("the Grids"). (R.357.) 20 C.F.R. Part 404, Subpart P, Appx. 2, Table No. 2.

[10] Somatoform denotes "physical symptoms that can not be attributed to organic disease and appear to be of psychic origin." Dorland's Illustrated Medical Dictionary 1722 (30th ed. 2003).

8

As the plaintiff appropriately points-out in his brief, Dr. Alan Morgan, his primary care physician, and Dr. John Eagle, his treating psychiatrist, view his pain condition quite differently. Dr. Morgan's medical records show that since 2001 the plaintiff had been seen and treated for a variety of pain complaints and that Dr. Alan Morgan had clinically diagnosed this pain condition to be fibromyalgia and degenerative arthritis. (R.169-186.) Similarly, the record shows that Dr. Eagle was, and remains, of the opinion that the plaintiff's pain was chronic and required treatment with a "relatively high dose" of morphine. (R.333, 335,777.)

Based on objective laboratory studies, however, Dr. Joseph Burge, a board certified rheumatologist, concluded that the plaintiff had only mild degenerative disc and joint disease of the lumbar spine. (R.24,136-142.) Additionally, two different medical advisors at separate administrative hearings provided detailed medical testimony consistent with Dr. Burge's less-than-disabling assessment of the plaintiff's physical condition. (R.23,285-301,620-630,665.) Therefore, despite the plaintiff's contention to the contrary, [11] this case presents no serious issue on appeal concerning the adequacy of the evidence supporting the Commissioner's finding that the plaintiff did not have a disabling physical impairment.

Thus, the central issue presented by the plaintiff's current appeal concerns the nature and extent of his mental health impairment. This is equally so, given the court's most recently remand of this case in order to permit the Appeals Council to consider and evaluate the contents of Dr.

---

[11] In his brief, the plaintiff suggests in the heading to the first section of his argument that his physical condition meets or equals Listing section 1.04(A); however, he offers no substantive support for this contention.

9

Eagle's November 2, 2005 letter setting forth his opinions concerning the nature and extent of the plaintiff's mental impairment (R.656,776-778).

Beginning in January 2003 Dr. Eagle has pharmacologically managed the plaintiff's mental health condition. (R.261-262,557-558,559-560,666,775) In March of the same year Dr. Eagle initially assessed the plaintiff's condition be a "psychiatric overlay to physical illness" (R.230) and opined that the plaintiff was "moderately " to "markedly" limited in his abilities in nearly all areas of understanding, memory, concentration, persistence, social interaction, and adaptation. (R.234-236.) Additionally, he opined that the plaintiff suffered from depressive, anxiety, and somatoform difficulties which caused "marked" restrictions in his daily activities, "extreme" difficulties in concentration, persistence, pace and social functioning, and "continual" episodes of decompensation in a work or work-like setting. (R.225-233.) Two months later, Cynthia Grey, a licenced professional counselor, similarly described the plaintiff as having "multiple physical impairments [resulting] in a secondary chronic depression and pain syndrome." (R.238; see also R.513-518.)

In contrast, based on the results of a detailed consultive psychological assessment in December 2002, Dr. Joseph Cianciolo described the plaintiff's long-standing psychological difficulties to be due to a "pain disorder associated with both psychological factors and general medical condition." (R.216.) Multiple assessments of the plaintiff's mental health issues by state agency psychologists also concluded that he exhibited depressive symptoms "secondary to [his] medical condition." (R.146; see also R.510-512.)

Likewise, Dr. Nadia Webb came to essentially the same conclusion two years later on the basis of a second equally detailed consultive psychological assessment. She concluded that the plaintiff's mental health difficulties were not disabling and that they represented only a slight limitation in his ability to understand and remember instructions and only a slight limitation in his ability to respond appropriately to supervision, co-workers and work pressures. (R.595-597.)

In addition to reporting in June 2003 that he had been seeing the plaintiff monthly,[12] Dr. Eagle described the plaintiff as having depressive and anxiety disorders which appeared to be "intertwined" with his pain. (R.559-560.) Without providing any supporting data or test results, Dr. Eagle also reported that testing had demonstrated the plaintiff to have no major memory problem or organizational difficulties, to have only "some" diminution in concentration and attention, and to have mental health difficulties primarily associated with his physical condition. (R.559-564.) Three months later, in a letter to the state agency, Dr. Eagle reported no change in diagnosis, and he further reported that the plaintiff "didn't want to help himself" and was not medication compliant. (R.557-558.)

In mid-October 2004, some thirteen months later, however, Dr. Eagle completed two questionnaires (R.569-573,574-582) in which he reported that at that time he was seeing the plaintiff at intervals of approximately three months and had clinically diagnosed the plaintiff to have depressive, anxiety, and pain disorders associated with his general medical condition. (R.569-

---

[12] On September 10, 2003 Dr. Eagle reported, however, that he had seen the plaintiff only once since June and that the plaintiff was not remaining medication compliant. (R.557-558.)

11

570,572.) In Dr. Eagle's opinion, the plaintiff's condition met both the "A" and "B" criteria [13] of sections 12.04, 12.06, and 12.07 of the Listing of Impairments. (R.574-582). *See* 20 C.F.R. Part 404, Subpart P, Appx. 1. Consistent with his previous practice, Dr. Eagle offered no clinical or testing-related data to support his conclusory opinions.

In a follow-up letter to plaintiff's counsel dated November 2, 2005, some thirteen months later, Dr. Eagle wrote that he had seen the plaintiff on fifteen occasions over the thirty-three month period between January 2003 and September 2005, that he had treated the plaintiff over this period with anti-depressant and mood stabilizing medication, and that he had reviewed both the medical evidence and the ALJ's May 25, 2005 decision. (R.776-778.) Based on this treatment history and this review of the medical record, in the same letter, Dr. Eagle reiterated his conclusory opinion that the plaintiff's psychiatric difficulties, not his physical problems, functionally interfered with his ability to work on a regular basis. (R.778.)

## A.

As previously noted, the plaintiff's first argument on appeal is his contention that the ALJ erred in making the step-three decisional finding that his mental impairments did not meet the criteria of Listing sections 12.04, 12.06, and 12.07 before the expiration of his insured status. In support of this argument, the plaintiff relies almost exclusively on the opinions of Dr. Eagle

---

[13] The agency's regulations direct the application of a multi-part determinative process to evaluate mental impairment claims. 20 C.F.R. § 404.1520a(a). The pertinent symptoms, signs and laboratory findings must be considered first to determine whether the individual has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). Next, the degree of any functional limitation resulting from such mental impairment must be rated in accordance with specific criteria set forth in the regulations. *Id.*

12

expressed in his submissions dated October 14, 2004. (R.569-582.) Therein, he opines that the plaintiff suffers from depression, anxiety and somatoform disorders, and that each of these conditions was of listing-level severity. (*Id.*)

However, Dr. Eagle's opinion, as the ALJ observed, is neither well-supported by clinical findings nor consistent with substantial evidence in the record. (R.666.) Fairly summarized, Dr. Eagle's records show no clinical basis for the significant functional limitations he reports, and they disclose little more than that he provided in his periodic medication reviews. (*Id.*) Moreover, as detailed in the two earlier administrative decisions, Dr. Eagle's opinion concerning the degree to which the plaintiff was functional limited is inconsistent with the results of a two-day vocational evaluation of the plaintiff in April 2002 at Woodrow Wilson Rehabilitation Center (R.20,349,157-165), and it is inconsistent with the two separate detailed psychological assessments made by Dr. Cianciolo in November 2002 (R.21-22,350,214-217) and by Dr. Webb on November 30, 2004.[14] (R.355-357,595-597.)

The date of Dr. Webb's psychological assessment is also of decisional significance in this case. It was conducted only one month before expiration of the plaintiff's insured status. (R.356.) Likewise, it is noteworthy that in the second administrative decision the ALJ "adopted" Dr. Webb's findings and her assessment of the plaintiff's mental functioning, and he made a specific finding that both were well-supported by testing and by the clinical data. (R.355.)

---

[14] Dr. Webb's report shows that her examination and testing were conducted on November 30, 2004 and that her report was not dictated and dated until December 14, 2004. (R.590) The later date was used by one of the ALJs for reference purposes in the second ALJ decision (*See* R.355).

13

Additionally, the ALJ's rejection of Dr. Eagle's opinion is also supported by the judgments of three state agency psychologists concerning the nature and severity of the plaintiff's condition. (R.143-156.496-512,665.)

A treating physician's medical opinion is entitled to controlling weight only "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Mastro v. Apfel*, 270 F.3$^d$ 171, 178 (4th Cir. 2001). Thus, if Dr. Eagle's, or any treating physician's, opinion lacks sufficient clinical evidence or if it is in conflict with other substantial evidence in the record, it should be appropriately accorded significantly less weight. *Craig v. Chater*, 76 F.3$^d$ 585, 590 (4th Cir. 1996). As demonstrated in the Commissioner's final decision, therefore, the ALJ properly held "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.'" *Mastro*, 270 F.3$^d$ at 178 (citing *Hunter v. Sullivan*, 993 F.2$^d$ 31, 35 (4th Cir. 1992).

Moreover, under the regulations the ALJ "may . . . assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 U.S. Dist. LEXIS 62868, *23 (WDVA, 2006). As outlined herein, the record fully supports the ALJ's relevant decisional rationale and finding. Despite the plaintiff's contention to the contrary, the ALJ clearly acted within his decisional authority in this case to assign decreased weight to the medical opinions and functional assessments of Dr. Eagle.

14

**B.**

As a second objection on appeal, the plaintiff argues that the ALJ erred in making the step-five finding that through the date that he was last insured he retained the ability to perform a range of sedentary work. This contention is also without merit.

In support of this argument the plaintiff relies to a significant degree on Dr. Eagle's November 2, 2005 letter in which Dr. Eagle restates the evidence concerning the plaintiff's physical impairments, repeats his belief that the plaintiff "emphasizes" his diffuse pain complaints, and reiterates his opinion that the plaintiff is functionally unable to perform gainful work. (R.776-778.) As the Appeals Council observed, however, in large measure this letter is simply a summary of the information Dr. Eagle had previously provided on the plaintiff's behalf and is fundamentally inconsistent with the information he initial provided in June 2003. (R.653-655.)

The plaintiff's reliance on Dr. Eagle's expression of an opinion in the same letter that he is "disabled" is also misplaced. The issue of disability is reserved to the Commissioner, and an ALJ is never bound by a treating physician's opinion on the ultimate issue in the case. 20 C.F.R. § 404.1527(e)(1).

As a part of his second appellate objection, the plaintiff also relies in part on an October 14, 2004 diagnosis and functional statement by Dr. Alan Morgan, his primary care physician. At that time, Dr. Morgan reported diagnoses of fibromyalgia and degenerative arthritis of the spine, and he opined that the plaintiff retained a functional ability to sit, stand, or walk for less than two hours

15

during an 8-hour work day. (R.206-209.) Dr. Morgan's opinion concerning the extent to which the plaintiff was functionally limited is, however, simply not supported by the evidence as a whole and is contrary to medical testimony of Dr. Charles Cook (R620-643,665), a board certified rheumatologist. This testimony by Dr. Cook, including his opinion that the plaintiff retained the physical ability to perform sedentary work, was found to be persuasive by two ALJ's in this case, and it was manifestly within their decisional authority to rely upon it. (R.347,407, 349-353,665-667.)

It is clear, therefore, that substantial evidence supports the ALJ's finding that through the date he was last insured, the plaintiff retained the functional ability to perform and to cope with sedentary work irrespective of his limitations.

## C.

The plaintiff also argues that the ALJ was affirmatively obligated in this case to obtain *sua sponte* the testimony of a psychiatrist in order to "address the physical and psychological pain" associated with the plaintiff's somatoform disorder. Although an ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," he is not obligated to obtain additional information when the record is adequate to make a determination regarding a disability claim. *France v. Apfel,* 87 F. Supp.2$^d$ 484, 489-490 (DMd, 2000); *see Cook v. Heckler,* 783 F.2$^d$ 1168, 1173, (4th Cir. 1985); *Walker v. Harris,* 642 F.2$^d$ 712, 714 (4th Cir. 1981); 20 C.F.R. § 404.1512 (e) and § 416.912(e).

Despite the plaintiff's assertions to the contrary, the medical record fails to suggest any complex medical problem which was not readily understandable by the ALJ. *See Richardson v. Perales*, 402 U.S. 389, 408 (1972) (noting that the use of medical advisors is "primarily in complex cases for explanation of medical problems in terms understandable" to the ALJ). Likewise, there was no suggestion in this case that the testimony of a medical advisor would assist in resolving an ambiguous onset date, clarify the significance of certain clinical or laboratory findings, or otherwise clarify some complex issue during a relevant time period. *See Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995); *Hearings, Appeals and Litigation Law Manual* ("HALLEX") I-2-534.

Moreover, the language of the applicable agency regulations concerning an ALJ's use of medical advisors is permissive, not mandatory. Under the applicable regulations, an ALJ permissively "may . . . ask for and consider opinions from medical experts on the nature and severity of [an individual's] impairment(s) and whether . . . [the] impairment(s) equals the requirements of any [listed] impairment." 20 C.F.R. § 404.1527(f)(2)(iii) and § 416.927(f)(2)(iii). In short, the decision to call a medical advisor at the administrative hearing is a matter left to the sound discretion of the ALJ. *See* 20 C.F.R. § 404.1527(f)(2)(iii) and § 416.927(f)(2)(iii); 20 C.F.R. § 404.1529(b) and § 416.929(b); *see also Siedlecki v. Apfel*, 46 F. Supp.2d 729, 732 (N.D. Ohio 1999). The agency's regulations give the ALJ the discretion to call on a medical advisor, and it is the ALJ's responsibility to review the evidence and resolve any conflicts in the medical evidence. *Siedlecki v. Apfel*, 46 F. Supp.2d at 732.

17

In passing it merits mention that this argument by the plaintiff is based solely upon the Second Circuit decision in *Perez v. Chater*, 77 F.3$^d$ 41, 47 (2$^d$ Cir. 1996), a decision which is not binding on this court. More importantly it is illogical, given the agency's requirement in 20 C.F.R. § 404.1527(d)(3) and § 416.927(d)(3) that the weight to be given a treating source opinion depends on the extent to which it is well-supported by clinical and laboratory findings in the record.

Even if it is assumed for the purpose of argument that the ALJ in this case had some obligation to contact Dr. Eagle before rejecting his opinions, the plaintiff has failed to make any showing of prejudice. *See Newton v. Apfel*, 209 F.3$^d$ 448, 458 (5th Cir. 2000) (holding that a plaintiff must demonstrate that additional evidence would have been produced by such a follow-up contact with a treating source and that it would have led to a different decision); *Ripley v. Chater*, 67 F.3$^d$ 552, 557 n.22 (5th Cir. 1995). Therefore, any assumed error by the ALJ in failing to fulfill any such assumed duty was at most harmless. *See Camp v. Massanari*, 22 Fed. Appx. 311, 311 (4th Cir. 2001) (unpublished).

**Conclusion**

As set forth in detail in section IV above, it is not the province of the court to make the disability determination. Its role is limited to determining whether the Commissioner's final decision is supported by substantial evidence. In this case, substantial evidence supports that decision. The recommendation that the decision of the Commission be affirmed is not intended to suggest in any way that the plaintiff is free of pain or does not have both physical and mental impairments. The objective medical evidence, however, simply fails to demonstrate the existence

of condition that could be reasonably expected to result in total disability within the meaning of the Social Security Act. Moreover, the extensive administrative record in this case demonstrates that the plaintiff's claim and the evidence, both objective and subjective, were properly considered and were fully and fairly assessed.

## VI. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. Substantial evidence supports the finding that the plaintiff's condition neither met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;

3. The ALJ did not err in his review of the plaintiff's physical impairments and associated functional limitations;

4. The ALJ did not err in his review of the plaintiff's psychiatric impairments and associated functional limitations;

5. Substantial evidence supports the finding that through the date the plaintiff was last insured, he retained the functional ability to perform sedentary work, including the unskilled sedentary jobs identified by the vocational witnesses;

6. The medical information and opinions of Dr. Eagle was appropriately considered following the remand of the plaintiff's case by order entered October 30, 2007;

7. The plaintiff has not met his burden of proving his disability on or before the date his insured status expired; and

8. The final decision of the Commissioner should be affirmed.

19

Case 5:08-cv-00014-SGW-JGW   Document 22   Filed 03/04/09   Page 19 of 20   Pageid#: 83

of condition that could be reasonably expected to result in total disability within the meaning of the Social Security Act. Moreover, the extensive administrative record in this case demonstrates that the plaintiff's claim and the evidence, both objective and subjective, were properly considered and were fully and fairly assessed.

## VI. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. Substantial evidence supports the finding that the plaintiff's condition neither met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;

3. The ALJ did not err in his review of the plaintiff's physical impairments and associated functional limitations;

4. The ALJ did not err in his review of the plaintiff's psychiatric impairments and associated functional limitations;

5. Substantial evidence supports the finding that through the date the plaintiff was last insured, he retained the functional ability to perform sedentary work, including the unskilled sedentary jobs identified by the vocational witnesses;

6. The medical information and opinions of Dr. Eagle was appropriately considered following the remand of the plaintiff's case by order entered October 30, 2007;

7. The plaintiff has not met his burden of proving his disability on or before the date his insured status expired; and

8. The final decision of the Commissioner should be affirmed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 4th day of March 2009.

/s/ *James G. Welsh*
United States Magistrate Judge